**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                          No. CR 10-2309 LH

FORTUNATO BELTRAN-LOPEZ,

       Defendant.

**AMENDED MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Fortunato Beltran-Lopez's Motion

to Suppress and Memorandum in Support Thereof (Doc. 28).  Defendant argues that evidence seized

from 3301 Monroe N.E., unit B-13, must be suppressed because the initial warrantless entry into the

apartment to secure it while officers obtained a search warrant was not supported by exigent

circumstances and the subsequently obtained search warrant lacked probable cause to issue.

Defendant also argues that paragraph 8 of the warrant contained deliberately or recklessly false

information.  The Court, after considering the motion, response, search warrant, and applicable law,

concludes that Defendant has not made the substantial preliminary showing required by *Franks*.

Thus, to the extent Defendant's motion to suppress can be considered a request for a *Franks* hearing,

that request will be denied.  The Court also determines that the search warrant did not lack probable

cause and that the good-faith exception would apply in any event, and therefore, the Court need not

hear further argument or any evidence on these issues at a hearing.  The remainder of Defendant's

motion to suppress concerning whether exigent circumstances were present to justify entry into the

apartment to secure it pending obtaining the search warrant, however, will remain under advisement

pending a hearing. The scope of the scheduled hearing will thus be limited to the exigent circumstances issue.

## I.   FACTUAL BACKGROUND

On July 21, 2010, Drug Enforcement Administration ("DEA") agents executed a Search Warrant at a residence at 3301 Monroe, NE, B-13, Albuquerque, New Mexico ("the Monroe home"). At that time, agents arrested Defendant Fortunato Beltran-Lopez. On August 10, 2010, a federal grand jury returned a two-count indictment against Defendants Manuel Gambino-Zavala and Fortunato Beltran-Lopez for conspiracy to possess with intent to distribute one kilogram and more of a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and § 846 (Count 1) and for possessing with intent to distribute one kilogram and more of a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2.

## II.   CONTENTS OF THE AFFIDAVIT

In support of his application for search warrant for the Monroe home, DEA Special Agent ("SA") Christopher Scott Godier's affidavit contained the following information:

On January 13, 2010, SA Tom Bartusiak and other agents, pursuant to a federal search warrant for the residence at 1803 Tierra Del Oso Drive NW, Albuquerque, NM ("1803 Tierra Del Oso home"), found over 1 kilogram of heroin, approximately 3 ounces of methamphetamine ("meth"), and $36,060 in U.S. currency inside the house. Prior to the execution of the warrant, Jose and Guillermo Beltran-Lopez arrived at the home in a gray Nissan Frontier bearing NM license LAD-113 ("the Nissan Frontier"). SA Bartusiak had observed this same Nissan Frontier parked in the driveway of the home on several occasions prior to the execution of the warrant, and once, the Nissan Frontier pulled into the attached garage of the home. A check of the Nissan Frontier's

license plate showed that the registered owner of the vehicle is Jesus Machado-Valencia.  After the heroin seizure on January 13, 2010, Jose and Guillermo Beltran-Lopez were arrested in the home and charged with possession with intent to distribute heroin and both remain in federal custody.

On May 13, 2010, SA Bartusiak obtained a federal search warrant for a property on James Cook Drive SW, Albuquerque, NM ("the James Cook home").  On the same day, prior to the execution of the search warrant, agents observed a gray Jeep Cherokee bearing NM license KTD-595 ("the Jeep Cherokee") "drive on to *the subject property* and meet with two Hispanic males, one of which was identified as Luis Alberto Fregoso-Rodriguez."  (Aff. ¶ 8 (emphasis added).)  Mr. Fregoso-Rodriguez was arrested later that day with two ounces of heroin.  During the search of the James Cook home, agents found approximately 13 ounces of heroin buried in the dirt under a shed on the property.  Mr. Fregoso-Rodriguez stated that the person in the Jeep Cherokee, later identified as Rafael Torres-Plata, had delivered the heroin to him that same day.  An indices check of the Jeep Cherokee showed that its registered owner is Jesus Machado-Valencia, the same owner of the Nissan Frontier driven by Jose and Guillermo Beltran-Lopez.

Later in the day on May 13, 2010, agents found the Jeep Cherokee at an apartment complex at 4023 Montgomery NE, Albuquerque, NM ("the Montgomery apartment").  Agents contacted the occupants at apartment H-16 and identified them as Rafael Torres-Plata and Rene Escatel-Chavez.  During a consent to search the apartment, agents found drug ledgers and U.S. Currency, including a $20 bill that had been used on May 7, 2010, to buy heroin from a Francisco Acosta-Rodriguez, a co-conspiractor of Mr. Escatel-Chavez.

On May 24, 2010, a DEA confidential informant stated that Rene Escatel-Chavez is receiving heroin from a group of traffickers from Sinaloa known as "Los Chakis."  On June 16, 2010, the informant also stated that "Los Chakis" have at least two residences rented on the 3300

block of Monroe NE, Albuquerque.

On June 18, 2010, SA Bartusiak drove to the Lafayette condominiums on the 3300 block of Monroe NE and drove behind Building B, the only building of the complex located on Monroe St. He saw three vehicles parked in stalls behind Building B and ran all three license plates. A gray Nissan sedan bearing NM license LJN-109 ("Nissan sedan") is registered to Jesus Machado-Valencia, the same registered owner of the Jeep Cherokee and Nissan Frontier. The Nissan sedan was parked directly behind Unit B-13. SA Bartusiak contacted the owner of the Monroe home and discovered that the current renter is a Mexican man named Nato Beltran who was recommended to the owner by a renter he had at another address, 2104 Tierra Del Oso Drive, NW, Albuquerque. SA Bartusiak immediately recognized that as an address that was listed on a 2002 Nissan sedan bearing NM license 6668SU ("2002 Nissan sedan") that he had seen parked in the driveway of the 1803 Tierra del Oso home on December 10, 2009. That 2002 Nissan sedan was registered to Celido Zamudio-Beltran at 2104 Tierra Del Oso Dr., NW.

About one week after talking to the owner of the Monroe home, SA Bartusiak conducted several drive-by surveillances at the Monroe home. Several times, he saw the Nissan Frontier parked in the assigned parking space for Unit B-13.

Between June 30, 2010 and July 10, 2010, SA Bartusiak observed the Nissan Frontier parked in front of the Monroe home on one occasion and he observed it parked directly behind Unit B-13 during those dates. On several occasions in this same time frame, SA Bartusiak observed the Nissan Frontier travel to the area of Candelaria NE and Tramway NE.[1]

---

[1]The United States asserts that the residence at 3227 Moab Lane NE, discussed *infra*, is located approximately one block west of Tramway and one block north of Candelaria. This fact, however, is not contained within the Affidavit.

At least ten times between June 30, 2010 and July 18, 2010, SA Bartusiak conducted periodic surveillance both during the day and night and noticed no other vehicles coming or going from the Monroe home.

On July 18, 2010, at 3:00 p.m., SA Bartusiak conducted spot surveillance at 3227 Moab Lane NE ("the Moab home"). He saw a trash can on the side of the Moab home with the last four numbers "6804." Later that night, SA David Howell and SA Bartusiak observed several trash cans on the street along Moab Lane. Only one of the cans had the number ending in "6804" on it. The agents obtained almost all the trash from the "6804" can and found a large amount of packaging material consistent with wholesale packaging of drugs, including two tan taped oblong packages consistent with packaging agents had seized containing heroin smuggled in the soles of shoes. They also found packaging consisting of numerous heat seal plastic with no food residue, consistent with some drug packaging found inside the 1803 Tierra Del Oso home. They also found black electrical tape covering plastic wrap that was covered in a greasy substance that smelled like petroleum jelly, known to be a masking agent to hide the smell of narcotics. Over 50% of the trash from the Moab home was consistent with drug packaging.

On July 19, 2010, agents observed a Hispanic male from inside the Moab home adjust the window shades, and then a few seconds later, he exited the front door and rolled the trash can with the numbers "6804" on it to the side yard of the Moab home.[2]

On July 20, 2010, SA Godier obtained a federal search warrant for the Moab home, which they executed on July 21, 2010. Prior to executing the search, at 10:00 a.m. on July 21, 2010, the Nissan sedan registered to Jesus Machado-Valencia backed out of the Moab home's garage, which

---

[2]Agents later identified this Hispanic male as Defendant Fortunato Beltran-Lopez, but this fact was not contained in the affidavit.

agents followed to the Monroe home and saw it park in front of the building.  The Hispanic male

driver got out and went into the Monroe home.[3]

At 11:00 a.m., agents executed the warrant to search the Moab home and found a hidden

compartment in a teal colored Nissan sedan ("teal Nissan") that was parked in the garage.  Inside

the compartment was 622.2 grams of a material that field tested positive for meth and 1263.6 grams

of material that field tested positive for heroin.  Agents also seized a cutting agent, digital scale,

vacuum food sealer, and a stolen Glock 40 caliber model 23 with a loaded magazine.

Agents then decided to seek a federal search warrant for the Monroe home.  At 1:20 p.m.,

while the affiant was preparing the search warrant, agents observed a Hispanic male leave the

Monroe home and drive away in the Nissan Frontier.  Agents detained him, secured the Monroe

home, and detained the additional male subject found therein.  All law enforcement was instructed

not to search the Monroe home pending application of the search warrant.

## III.    DISCUSSION

### A.    Probable Cause for Search Warrant

A search warrant must be based upon probable cause, which a reviewing court determines

by examining the affidavit supporting the warrant.  *See United States v. Tisdale*, 248 F.3d 964, 970

(10th Cir. 2001).  The court determines the "sufficiency of the affidavit upon which a warrant is

issued by looking at the totality of the circumstances and simply ensuring 'that the magistrate had

a substantial basis for concluding that probable cause existed.'"  *Id.* (quoting *Illinois v. Gates*, 462

U.S. 213, 238-39 (1983)).  Probable cause exists "only when the supporting affidavit sets forth facts

that would lead a prudent person to believe there is a fair probability that contraband or evidence

---

[3]The Hispanic male was later identified as co-Defendant Manuel Gambino-Zavala.  The affidavit does not contain his identity.

of a crime will be found in a particular place." *United States v. Basham*, 268 F.3d 1199, 1203 (10th

Cir. 2001). "The task of the issuing magistrate is simply to make a practical, common-sense

decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability

that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

Finally, a reviewing court should pay great deference to the magistrate judge's determination of

probable cause, and "should not invalidate . . . warrant[s] by interpreting affidavit[s] in a

hypertechnical, rather than commonsense, manner." *Id*. at 236.

Defendant argues that the search warrant for the Monroe home failed to establish probable

cause because the facts contained therein were not particularized to Defendant Beltran-Lopez,

included stale information of alleged criminal activity relating to other individuals at different

locations, and misrepresented facts vitiating probable cause. Defendant contends that the Court

should not consider the statement by the confidential informant provided in the affidavit because

the affidavit is devoid of any information about the informant's reliability and the informant's

knowledge had no temporal reference. He also asserts that paragraph 13 of the affidavit should be

excised from the probable cause analysis because it has no bearing on the Monroe home.

Additionally, Defendant argues that paragraph 8 of the affidavit should be struck because it contains

a blatant misrepresentation. Defendant asserts that the affidavit does not show a sufficient nexus

between the Monroe home and the illegal drug activity. Finally, Defendant contends that the good-

faith exception is inapplicable to this case because the affidavit failed to establish any criminal

activity at the Monroe home so that it was unreasonable for the agents to believe that the warrant

was supported by probable cause.

### 1.    Statement of confidential informant should be considered.

In testing the sufficiency of probable cause, courts may look at information received from

a confidential informant, so long as other matters contained in the warrant corroborate the informant's statement. *See Jones v. United States*, 362 U.S. 257, 269 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83 (1980); *United States v. Hager*, 969 F.2d 883, 887 (10th Cir. 1992) (holding probable cause existed where independent investigation corroborated informant's report), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137 (1995). The affidavit here does not contain any information regarding the confidential informant, such as past dealings that had been corroborated, or how he or she knew the information obtained. Nevertheless, where there is sufficient independent corroboration of an informant's information, there is no need to establish his or her veracity. *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000).

In this case, the informant's statement that Rene Escatel-Chavez was receiving heroin from "Los Chakis" and that "Los Chakis" have at least two residences rented on the 3300 block of Monroe NE was corroborated in the affidavit by the agent's discussion of SA Bartusiak's subsequent investigation that linked the Monroe home to drug activity. For example, the Nissan sedan located at the Monroe home was registered to Jesus Machado Valencia, the registered owner of the Jeep Cherokee linked to Rafael Torres-Plata, who was driving it on May 13, 2010, and who Mr. Fregoso-Rodriguez said delivered heroin to him. Mr. Torres-Plata occupied the same Montgomery apartment as Mr. Escatel-Chavez in which agents found evidence of drug trafficking. The link to Jesus Machado Valencia also linked the Monroe home to the seizure of heroin from the 1803 Tierra del Oso home, because Jesus Machado Valencia was the registered owner of the Nissan Frontier that drove to the 1803 Tierra del Oso home on several occasions, even pulling into the garage once, and was driven on the day of the January 13, 2010 search by Jose and Guillermo Beltran-Lopez, who were arrested for heroin possession. That same Nissan Frontier was parked in the assigned parking

8

space for Unit B-13 on more than one occasion and between June 30, 2010 and July 10, 2010, SA

Bartusiak observed the Nissan Frontier parked in front of the Monroe home.  Moreover, on July 21,

2010, agents found drugs in the teal Nissan at the Moab home.  On the same day, just prior to their

search, agents observed a Hispanic male back the Nissan sedan registered to Jesus Machado-

Valencia out of the Moab home's garage, drive to the Monroe home, and park in front of the

building.  The Hispanic male driver got out and went into the Monroe home.

All these facts contained in the affidavit, as well as others discussed below, corroborated the

informant's statement that heroin dealers had a residence on the 3300 block of Monroe NE.  *Cf.*

*Avery*, 295 F.3d at 1169 n.10 (concluding that the controlled drug transaction, in which the

informant participated, corroborated the informant's allegations).  Because the agents' subsequent

investigation sufficiently corroborated the informant's statements, those statements should be

considered in the totality of the circumstances analysis.

> **2.      Paragraphs 8 and 13 do not contain false, misleading, or irrelevant statements and should not be struck.**

It is a violation of the Fourth Amendment for an affiant to knowingly and intentionally, or

with reckless disregard for the truth, include false statements in an affidavit filed in support of a

search warrant.  *Tisdale*, 248 F.3d at 973 (citing *Franks v. Delaware*, 438 U.S. 154, 155 (1978)).

A defendant must satisfy a two-prong test to be entitled to a *Franks* hearing: (1) the defendant must

make a substantial showing that a false statement was knowingly, intentionally, or recklessly

included in the affidavit; and (2) the statement was necessary to a finding of probable cause.  *See*

*id.*

Discussing the circumstances necessitating an evidentiary hearing, the Court further

explained in *Franks*:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant.  To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . . Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks*, 438 U.S. at 171-72.

Defendant argues that Paragraph 13 should be struck because it has no bearing on the Monroe home.  To the contrary, Paragraph 13 contains relevant information linking the Monroe home to drug trafficking:  SA Bartusiak observed the Nissan Frontier park behind the Monroe home between June 30, 2010 and July 10, 2010.  Other portions of the affidavit discuss the Nissan Frontier's link to drug activity.  Paragraph 13 therefore should be considered in the totality of the circumstances analysis.

Defendant also asserts that Paragraph 8 should be struck under *Franks* because it contains the allegedly blatant misrepresentation that on May 13, 2010, agents observed an individual who was later arrested for narcotics trafficking drive to the Monroe home prior to his arrest.  Defendant argues that this representation was also included in the affidavit supporting the warrant to search the Moab home and was attributed to that property.

Paragraph 8 discusses the execution of the warrant to search the James Cook house.  The language of which Defendant complains states that agents observed the Jeep Cherokee "drive on to *the subject property* and meet with two Hispanic males, one of which was identified as Luis Alberto Fregoso-Rodriguez."  (Aff. ¶ 8 (emphasis added).)  The affidavit thus never stated what the "subject property" was – the Monroe home, the Moab home, or the James Cook house.  The Government represents that "the subject property" refers to the James Cook house.  Indeed, based on the context

of the entire paragraph, this Court similarly interprets "the subject property" as referring to the James Cook house. The Court therefore does not believe that Paragraph 8 contains a false or misleading statement that was knowingly, intentionally, or recklessly made. Nor is the allegedly false phrase necessary to a finding of probable cause. Paragraph 8 should thus not be struck under *Franks* and no hearing on this issue is necessary.

### 3.  The search warrant was supported by probable cause.

"[P]robable cause requires a nexus between the place to be searched and the items to be seized." *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999). The "affidavit supporting the search warrant need not contain direct evidence or personal knowledge that the items sought are located at the place to be searched." *Id.* The magistrate judge instead may draw reasonable inferences from the material provided in the affidavit supporting the warrant. *Id.*

On May 24, 2010, a confidential informant reported that Rene Escatel-Chavez was receiving heroin from a group of traffickers from Sinaloa known as "Los Chakis." On June 16, 2010, the informant also stated that "Los Chakis" have at least two residences rented on the 3300 block of Monroe NE, Albuquerque. Numerous facts discovered in the agents' investigation conducted in the weeks that followed the informants' tip corroborated the informants' statement that the Monroe home was used in heroin trafficking and confirmed that the informants' information was reliable and not stale.

For example, evidence linked the Monroe home to the heroin and meth discovered in the 1803 Tierra del Oso home. The Nissan sedan parked at the Monroe home was registered to Jesus Machado Valencia who was also the registered owner of the Nissan Frontier that went to 1803 Tierra del Oso several times. The 2002 Nissan sedan that SA Bartusiak observed at 1803 Tierra del Oso on December 10, 2009, was registered to a Celido Zamudio-Beltran living at 2104 Tierra Del

Oso, the same address that the Monroe home's owner also owned and the renter from that address

recommended Nato Beltran as a renter for the Monroe home.  SA Bartusiak observed the Nissan

Frontier, which he had seen at the 1803 Tierra Del Oso home several times, parked in the assigned

parking space for the Monroe home on several occasions in late June 2010.  Jose and Guillermo

Beltran-Lopez drove the Nissan Frontier to and from 1803 Tierra del Oso and were arrested at that

house for possession with intent to distribute heroin.  Their last names suggested a possible familial

link to "Nato Beltran."[4]  During surveillance of the Monroe home between June 30, 2010, and July

18, 2010, on at least 10 occasions, SA Bartusiak noticed no other vehicles coming or going from the

Monroe home, further indicating that the resident was indeed linked to the greater drug conspiracy.

Additional evidence linked the Monroe home to the heroin discovered at the James Cook

house.  Agents observed the Jeep Cherokee at the James Cook house, which was registered to Jesus

Machado-Valencia, the same owner of the Nissan sedan and Nissan Frontier observed at the Monroe

home.  Mr. Fregoso-Rodriguez, who was arrested with two ounces of heroin later that day, stated

that the person in the Jeep Cherokee, later identified as Rafael Torres-Plata, had delivered heroin

to him that same day.  Mr. Torres-Plata occupied the Montgomery apartment with Rene Escatel-

Chavez where agents found evidence of drug trafficking, including a $20 bill used on May 7, 2010,

to buy heroin from another co-conspirator.  The confidential informant reported that Rene Escatel-

Chavez was getting heroin from Los Chakis who had a residence on the 3300 block of Monroe.

Finally, evidence linked the Monroe home to the heroin and meth discovered at the Moab

home.  Wholesale drug packaging materials found in the Moab home's trash was consistent with

some of the packaging found inside the 1803 Tierra Del Oso home, which links to the Monroe home

---

[4]Although not included in the affidavit, the Government represents that Jose and
Guillermo Beltran-Lopez are Defendant's brothers.

through the evidence just discussed.  Moreover, on the day of the execution of the Moab home search warrant, agents observed a Hispanic male drive the Nissan sedan registered to Jesus Machado-Valencia from the Moab home to the Monroe home and go inside.

Although there are certainly innocent explanations that could explain all the listed connections between the Monroe home and the other residences in which drugs were discovered, a magistrate judge is "not required to rule out every other possible alternative."  *United States v. Shomo*, 786 F.2d 981, 984 (10th Cir.1986).  The Court concludes that the totality of the evidence supplied in the affidavit would lead a reasonable person to believe there was a fair probability that contraband or evidence of a crime would be found in the Monroe home and that the magistrate judge had a substantial basis for concluding that probable cause existed.

**B.    *Leon* good-faith exception applies**.

Under *United States v. Leon*, 468 U.S. 897 (1984), evidence seized pursuant to a neutral and detached magistrate's issuance of a warrant later found invalid is still admissible if the executing officer acted in objective good faith and with reasonable reliance on the warrant.  *Id.* at 905, 922-23. In determining whether the good faith exception applies, the court must consider all of the circumstances, assume that the officers have a reasonable knowledge of what the law prohibits, and determine whether the underlying documents are devoid of factual support, not merely whether the facts they contain are legally sufficient.  *Tisdale*, 248 F.3d at 972.  The good-faith inquiry is confined to the question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization.  *Id.* (quoting *Leon*, 468 U.S. at 922 n.23).

The Supreme Court has recognized four situations in which the good-faith exception would not apply: (1) the issuing magistrate judge was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard for the

truth; (2) the issuing magistrate judge wholly abandoned his judicial role; (3) the affidavit in support

of the warrant was so lacking in indicia of probable cause as to render official belief in its existence

entirely unreasonable; and (4) the warrant was so facially deficient that the executing officer could

not reasonably believe it was valid. *Id.* (citing *Leon*, 468 U.S. at 922-23). The government bears

the burden of proving that its agents' reliance on the warrant was objectively reasonable. *United*

*States v. Cook*, 854 F.2d 371, 373 (10th Cir. 1988).

Defendant argues that the good-faith exception does not apply because the affidavit failed

to establish any criminal activity at the Monroe home so that it was unreasonable for the agents to

believe that the warrant was supported by probable cause. Defendant also asserts that the issuing

magistrate judge wholly abandoned his judicial role in approving the warrant. This Court disagrees.

Based on the totality of facts provided in the affidavit, the agents had an objective good-faith,

reasonable belief that there was probable cause to support the warrant. The warrant was certainly

not devoid of factual support. Accordingly, even if probable cause to support the warrant were

lacking, the good-faith exception applies in this case. *Cf. United States v. Quezada-Enriquez*, 567

F.3d 1228, 1234-35 (10th Cir. 2009) (applying good-faith exception where officers who executed

warrant did so believing it was properly issued and affidavit was not so lacking that it would have

been entirely unreasonable for agent to rely on it); *Danhauer*, 229 F.3d at 1007-08 (concluding that

*Leon*'s good-faith exception applied because officer took steps to investigate informant's allegation

and affidavit contained more than conclusory statements based on informant's allegation about

criminal activity at residence).

## IV.    CONCLUSION

For all of these reasons, the Court concludes that Defendant has not made the substantial

preliminary showing required by *Franks*, and thus, the Court will not conduct a *Franks* hearing. The

14

Court also concludes that the search warrant was supported by probable cause, and that even if it were not, the *Leon* good-faith exception applies in this case. The Court therefore finds no reason to address those issues at the hearing scheduled in this matter. The Court, however, reserves ruling on whether there were sufficient exigent circumstances to justify agents entering the Monroe home to secure it while they sought the search warrant until the Court hears evidence on the issue at the hearing.

　　　　**IT IS THEREFORE ORDERED** that

　　　　1.　　　Defendant's motion to be suppress (**Doc. 28**) is **DENIED IN PART** in that, to the extent Defendant's motion to suppress can be considered a request for a *Franks* hearing, that request is **DENIED**.

　　　　2.　　　The issues in Defendant's motion to suppress not already ruled upon in this Memorandum Opinion and Order remain **under advisement** pending the scheduled hearing. The Court will limit the scope of the scheduled hearing to only those unresolved issues.

　　　　　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　　　　SENIOR UNITED STATES DISTRICT JUDGE